```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------:
WAYNE HUNT,                   :    05 Civ. 8996 (JCF)
                              :
              Petitioner,     :    OPINION AND ORDER
                              :
        - against -           :
                              :
UNITED STATES PAROLE COMMISSION & :
CRAIG APKER, WARDEN, OTISVILLE :
F.C.I.,                       :
              Respondents.    :
------------------------------:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Wayne Hunt brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging decisions by the United States Parole Commission (the "Parole Commission" or the "Commission") revoking his parole and denying him re-parole. He claims that the Commission (1) failed to conduct his revocation hearing in a timely manner; (2) denied him due process by voiding a prior proceeding; (3) improperly relied in its decisions on conduct for which he was either not charged or not convicted; (4) based its decisions on incomplete information; (5) violated his due process rights by refusing to take testimony from a witness by telephone; (6) wrongfully departed upward from parole guidelines when it denied him re-parole following revocation; and (7) erroneously considered information that should have been the subject of an earlier revocation proceeding and was not included in the current parole violator warrant.

The parties consented to my exercising jurisdiction over the

1

petition for all purposes pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the petition is denied.

Background

In February 1977, Wayne Hunt pled guilty in the United States District Court for the Western District of Louisiana to a charge of kidnaping in violation of 18 U.S.C. § 1201. (Certificate of Douglas W. Thiessen dated Dec. 27, 2005 ("Thiessen Cert."), Exh. B). He had lured a twelve year old boy from his home in Lewisburg, Louisiana with promises of money, clothing, and a motorcycle, and he held the boy captive for several weeks, reportedly wielding a .357 magnum pistol during that time. (Thiessen Cert., Exh. B). At the time of his arrest, the petitioner had a criminal record dating back to 1964 when he was charged with desertion from the Navy. He had been charged with sexual perversion in 1973 and served three years of probation after conviction on a lesser charge, and in 1975 he was arrested for taking indecent liberties with a child, a charge for which no disposition was recorded. (Thiessen Cert., Exh. B). Following his conviction for kidnaping, Mr. Hunt was sentenced to life imprisonment, a term that was later reduced to ten years. (Thiessen Cert., Exh. A).

In July 1985, the petitioner's federal probation officer notified the Parole Commission that Mr. Hunt had been indicted in Troy, New York for sodomy in the second degree and sexual abuse of a minor in the second degree in connection with his molestation of

2

two different boys, and that a bench warrant had issued when he failed to appear to answer the charges. (Thiessen Cert., Exh. D). Consequently, the Commission issued a parole violator warrant based on these charges as well as on Mr. Hunt's failure to report to his parole supervisor and his failure to report a change in address. (Thiessen Cert., Exh. E). In November 1985, the Commission supplemented the warrant based on the petitioner's having been charged in August 1985 with grand larceny. (Thiessen Cert., Exh. F). Then, in January 1986, the Commission again supplemented the warrant, this time to indicate that the petitioner had pled guilty to the sodomy and grand larceny charges. (Thiessen Cert., Exh. G). Mr. Hunt was sentenced to concurrent terms of two to four years of imprisonment on these state charges. (Thiessen Cert., Exh. G).

While in state custody, the petitioner was notified that the Parole Commission intended to conduct a dispositional review of the outstanding parole violator warrant. (Thiessen Cert., Exh. H). Mr. Hunt's attorney responded with a statement signed by the petitioner. (Thiessen Cert., Exh. J). Upon completion of its review in March 1987, the Commission determined to maintain the warrant as a detainer until the petitioner completed his state sentence. (Thiessen Cert., Exhs. M, N).

Mr. Hunt's original term expired in February 1987, ten years after he had been sentenced. However, in December 1987, the United States Probation Office for the Northern District of New York

3

notified the Parole Commission that the petitioner had been charged in Rensselaer County Court in a 50-count indictment for acts committed between 1982 and 1985 and had pled guilty in November 1987 to two counts of kidnaping in the second degree, five counts of use of a child for sexual performance, two counts of promoting sexual performance, six counts of sodomy in the first degree, and three counts of sodomy in the second degree. (Thiessen Cert., Exh. O). He received a total aggregate sentence of twelve and one-half to twenty-five years imprisonment. (Thiessen Cert., Exh. O). The Commission advised the Probation Office that it could not supplement the parole violator warrant because Mr. Hunt's original term had expired, but it noted that the conduct that had now come to light could be considered in connection with adjudication of the existing warrant. (Thiessen Cert., Exh. P).

The Parole Commission then initiated another dispositional review of the parole violator warrant. A hearing was held on September 25, 1990, at which Mr. Hunt was represented by counsel. (Thiessen Cert., Exh. T). Based on the petitioner's admissions with respect to the original parole violation charges -- that he had committed sodomy in the second degree and grand larceny and that he had failed to report to his parole officer and had failed to report a change in address -- the hearing officer recommended, among other things, that Mr. Hunt's parole be revoked. (Thiessen Cert., Exh. T). The Commission then revoked the petitioner's

parole, denied him credit for the time he had spent on parole, and ordered that the warrant be executed when Mr. Hunt was released from state custody. (Thiessen Cert., Exh. U). It also supplemented the warrant to incorporate the charges from Mr. Hunt's 1987 conviction, even though it had previously determined that it was not permitted to do so. (Thiessen Cert., Exh. V).

On March 11, 2004, the petitioner completed his state sentence, and the United States Marshal for the Northern District of New York took him into custody on the pending parole violation charges. (Thiessen Cert., Exh. Y). Recognizing its earlier error, the Commission removed from the parole violator warrant the supplementary charges relating to Mr. Hunt's 1987 conviction, but it found probable cause to proceed with respect to the other violations. (Thiessen Cert., Exhs. Z, AA).

Prior to the final revocation hearing, the Parole Commission calculated the petitioner's guideline range for re-parole. It determined that he had a salient factor score[1] of six based on factors including the nature of his prior offenses, his age, and his parole history and a severity score[2] of seven because the offense at issue involved forcible sodomy; these calculations

---

[1] The "salient factor score," a number assigned by the Parole Commission, represents the risk of parole violation. 28 C.F.R. § 2.20(e).

[2] A severity rating is a number assigned by the Commission to represent mitigating and aggravating factors, including the severity of the offense behaviors. 18 C.F.R. § 2.20(d).

5

resulted in a guideline range of 64-92 months. (Thiessen Cert., Exh. BB). However, because of the charge of failing to appear, the Commission enhanced Mr. Hunt's potential sentence by 6-12 months, resulting in a total guideline range of 70-104 months. (Thiessen Cert., Exh. BB).

The petitioner's final revocation hearing was held on June 30, 2004. Mr. Hunt, represented by counsel, admitted that he had committed sexual abuse in the second degree and sodomy in the second degree and had failed to appear in court as directed; he admitted that he had failed to report to the parole officer; he admitted that he had failed to report a change in residence; and he admitted that he had committed grand larceny in the third degree. (Thiessen Cert., Exh. CC). On July 14, 2004, the Commission issued a decision revoking Mr. Hunt's parole and denying him credit for time spent on parole. (Thiessen Cert., Exh. DD). However, it deferred decision on whether the petitioner would be eligible for re-parole until it obtained additional data about his disciplinary record in prison and his participation in counseling programs. (Thiessen Cert., Exh. DD).

After receiving the supplemental information, the Parole Commission issued a final determination on March 4, 2005. It departed from the guideline range and required Mr. Hunt to serve out the remainder of his federal sentence. (Thiessen Cert., Exh. II). While acknowledging that the charges relating to the

6

petitioner's 1987 conviction had been withdrawn as a formal violation specification, the Commission relied on the underlying conduct as an important aggravating factor:

> After review of all relevant factors and information, a decision above the guidelines is warranted because your offense involved the following aggravating factors: Your admission to Kidnapping [sic] and Sex Acts [in connection with the 1987 charges]. You are a more serious risk th[a]n indicated by your guidelines in that your original 1976 Federal crime involved the Kidnapping [sic] (for several weeks) of a 12-year old boy. In 1985, you sexually assaulted 2 boys and you were convicted by New York State. This, in part, has resulted in your current parole violation. . . . [T]he Commission continues to believe that you are a more serious risk to the community th[a]n indicated by your guidelines and that full service of term is warranted.

(Thiessen Cert., Exh. II). The Commission followed the recommendations of the hearing examiner who had also noted that the behavior underlying the 1987 criminal charges could be considered an aggravating factor. (Thiessen Cert., Exh. HH).

The petitioner appealed the Parole Commission's determination to the National Appeals Board (Thiessen Cert., Exh. JJ), and on June 9, 2005, the decision was affirmed. (Thiessen Cert., Exh. KK). Mr. Hunt then filed the instant petition. He is scheduled for mandatory release on March 18, 2007, at which time he will have served his full sentence. (Thiessen Cert., Exh. A).

<u>Discussion</u>

The statutes that created the federal parole system, 18 U.S.C. §§ 4201-4218 were repealed in 1984. However, they remain applicable to Mr. Hunt because he was sentenced for crimes

7

committed prior to November 1, 1987, when the United States Sentencing Guidelines became effective. See Pub. L. No. 107-273, § 11017, 116 Stat. 1758, 1824 (2002), reprinted in 18 U.S.C. §4202 note.

   A. Timeliness of the Revocation Proceedings

A parole revocation hearing must be held within ninety days of execution of the violator warrant pursuant to which the parolee is taken into custody. 28 C.F.R. § 2.49(f); see Boone v. Menifee, No. 03 Civ. 2593, 2005 WL 2234031, at *3 (S.D.N.Y. Sept. 13, 2005). In this case, Mr. Hunt's hearing was untimely because it was held 109 days after he completed his state term of imprisonment and was turned over to federal authorities on the parole violation warrant. However, "[e]ven assuming dispositional review was untimely, absent prejudice or bad faith on the Commission's part, the appropriate remedy is not a writ of habeas corpus, but a writ of mandamus to compel compliance with the statute." Heath v. United States Parole Commission, 788 F.2d 85, 89 (2d Cir. 1986); see Martinson v. United States Parole Commission, No. 02 Civ. 4913, 2003 WL 21688241, at *1 n.2 (S.D.N.Y. July 18, 2003); King v. Hasty, 154 F. Supp. 2d 396, 401 (E.D.N.Y. 2001) ("The mere fact of delay, however, is not by itself sufficient to establish a due process violation. Rather, the petitioner must also show that the delay was unreasonable and prejudicial.") (footnote, citations, and quotation marks omitted). Here, Mr. Hunt acknowledged at the hearing that he had not been

8

prejudiced by the delay (Thiessen Cert., Exh. CC), and he has never suggested that the Commission acted in bad faith in scheduling the proceedings. Accordingly, habeas corpus is not warranted, and any relief in the form of an order directing the Commission to proceed with a hearing is now moot.

Following completion of a revocation hearing, the Commission must issue a written determination within twenty-one days. 18 U.S.C. § 4214(e). Mr. Hunt's hearing was held on June 30, 2004, and a decision revoking parole was rendered on July 14, 2004, well within the established time limits. The decision with respect to re-parole was then deferred pending the acquisition of information related to the petitioner's conduct while in state custody. Mr. Hunt has not complained about the delay occasioned by that process, and he has certainly demonstrated no prejudice. His claim concerning the timeliness of his parole revocation proceedings is therefore without merit.

B. "Voiding" of the 1990 Determination

Mr. Hunt next argues that the Commission improperly "voided" and "rescinded" the results of the dispositional review proceeding held in 1990. This claim reflects a misunderstanding of the record. The 1990 hearing resulted in the revocation of Mr. Hunt's parole and a determination to execute the outstanding violator warrant upon completion of his state sentence. (Thiessen Cert., Exhs. U, V). These determinations were not nullified; indeed, the

9

warrant was executed, and a final revocation hearing was held thereafter. Rather, in 1995, the Commission realized that a dispositional revocation hearing had been scheduled for October 1987 but never held. (Thiessen Cert., Exh. W). It then corrected its records by rescinding the directive scheduling that hearing. Unfortunately, the order by which it accomplished this was so terse that it caused understandable confusion on the part of the petitioner. (Thiessen Cert., Exh. X). That does not, however, give rise to a claim for violation of constitutional or statutory rights.

    C. <u>Reliance on Conduct Not Leading to Conviction</u>

The petitioner asserts that the Commission improperly considered aspects of his criminal history consisting of charges for which there was no recorded disposition. Indeed, the Commission relied on his presentence report, which identified arrests that did not lead to conviction, and it was aware of the fifty counts on which Mr. Hunt had been indicted in 1987, although he ultimately did not plead guilty to all of them.

None of this, however, violated the petitioner's due process rights. The Parole Commission is entitled to take into consideration unadjudicated charges, see <u>Billiteri v. United States Board of Parole</u>, 541 F.2d 938, 944 (2d Cir. 1976); <u>Fripp v. United States Parole Commission</u>, No. 88-CV-937, 1990 WL 94203, at *3 (N.D.N.Y. July 6, 1990), dismissed counts of an indictment, see

10

Billiteri, 541 F.2d at 944; Fripp, 1990 WL 94203, at *3; United States ex rel. Carrasquillo v. Thomas, 527 F. Supp. 1105, 1109 (S.D.N.Y. 1981), or even evidence of crimes for which the parolee was acquitted. See Billiteri, 541 F.2d at 944; Fripp, 1990 WL 94023, at *3; Papadakis v. Warden, Metropolitan Correctional Center, 631 F. Supp. 252, 255 (S.D.N.Y. 1986). Furthermore, the Commission is specifically authorized by statute to rely upon the presentence report. 18 U.S.C. § 4207. Thus, this claim, too, fails.

D. Completeness of the Record

Mr. Hunt contends that New York State failed to supply complete program and disciplinary records for the period he was in state custody, and that the record on which he was denied re-parole was therefore inadequate. This claim fails because the petitioner, who was represented by counsel, never registered an objection to the state of the record. Consequently, any argument that the record was incomplete has been waived. See Duckett v. Quick, 282 F.3d 844, 847-48 (D.C. Cir. 2002) (parolee waived right of confrontation by failing to object to lack of opportunity for cross-examination); Cole v. Harrison, 271 F. Supp. 2d 51, 53 (D.D.C. 2002) (same).

E. Opportunity to Present a Witness

Mr. Hunt also argues that his due process rights were violated when the Commission denied his request to have a witness testify by

11

telephone at the final revocation hearing. He acknowledges, however, that he was offered the opportunity to have the witness submit a letter providing any relevant information. (Petition, Point E).

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court set out the minimum requirements for a parole revocation hearing that would be consistent with due process:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

Id. at 489. While the Court specifically indicated that the parolee must be permitted to appear in person, it applied no such requirement to the testimony of other witnesses. Indeed, the Court held that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id. The Commission therefore did not violate Mr. Hunt's due process rights by denying his request to arrange for a witness to testify by telephone while allowing the witness to submit a letter instead.

F. Departure from the Guidelines

The petitioner also challenges the substance of the Parole

12

Commission's determination; he contends that it improperly departed upward from the guidelines. Although his guideline range was 70-104 months, and although he had served 235 months at the time of his revocation hearing, he was nevertheless denied re-parole.

"Federal court review of parole commission decisions is extremely limited, because the commission has been granted broad discretion to determine parole eligibility." Bialkin v. Baer, 719 F.2d 590, 593 (2d Cir. 1983). Accordingly, "a court may not substitute its own judgment for that of the commission, but may consider only whether there is a rational basis for the commission's decision." Id. (citations omitted).

This standard applies not only to determinations whether to grant, deny, or revoke parole, but also to decisions to depart from the guidelines. In 18 U.S.C. § 4203, Congress directed the Parole Commission to develop guidelines for the exercise of its discretion. However, "[a]lthough the Commission generally relies on the guidelines in determining the release date of a prisoner, it is not limited exclusively by them." Iuteri v. Nardoza, 732 F.2d 32, 36 (2d Cir. 1984) (citation omitted). Rather, Congress specifically provided that the Commission could exceed the guidelines upon finding good cause to do so. 18 U.S.C. § 4206(c). Thus, a departure may be based upon "especially . . . aggravating circumstances in a particular case," 28 C.F.R. § 2.20(d), and a court "will uphold the Commission's decision to go above the

13

guidelines in setting parole where it is not irrational for the Commission to do so." Iuteri, 732 F.2d at 37; see also Mamone v. James, No. 85 Civ. 9550, 1989 WL 6642, at *2 (S.D.N.Y. Jan. 23, 1989).

In this case, the Commission explained that it was departing upward in light of the severity of the original crime and the similar criminal activity for which Mr. Hunt was convicted in 1985 and again in 1987. (Thiessen Cert., Exh. II). "The frequency and regularity of offenses is a rational consideration for the Parole Commission." Romano v. Baer, 805 F.2d 268, 270 (7th Cir. 1986). Thus, it was entirely logical for the Commission to conclude that the guidelines did not adequately take into account the evidence that Mr. Hunt's history of sexual crimes reflected a continuing danger to the community: he was initially convicted of kidnaping a young boy and effectively holding him prisoner with the threat of violence; his parole was revoked when he was convicted of sodomy with a minor; and he was further convicted of multiple counts of sodomy, kidnaping, and promoting sexual performance by children. This pattern fully justified departure from the guidelines, and the Commission's determination cannot be second-guessed.

G. Timing and Substance of Final Revocation Hearing

Finally, Mr. Hunt presents a somewhat confused challenge to his final revocation hearing. (Petition, Point G). It seems to be based on two arguments: that the final revocation decision should

have been made at the 1990 dispositional review rather than being deferred until 2004, and that the decision could not, in any event, take into consideration the conduct that formed the basis for the 1987 conviction. Neither contention has merit.

A parolee is entitled to a prompt hearing upon being arrested for an alleged violation of parole. However, when he is serving a sentence on charges unrelated to his original conviction, as was Mr. Hunt following his convictions in the New York State courts, the parole violator warrant may simply be lodged as a detainer. 18 U.S.C. § 4214(b)(1). The parolee then is entitled to a dispositional review, following which the Commission may withdraw the detainer or let it stand. 18 U.S.C. § 4214(b)(1), (3). But until the detainer is actually executed, the parolee is not in custody under the warrant, and there is no obligation to proceed with a final revocation hearing. Therefore, the Commission's determination to defer a final revocation proceeding in Mr. Hunt's case until the detainer was executed when he was released from state custody did not violate his rights.

Nor was it improper for the Commission to consider the 1987 convictions. To be sure, as a matter of the Second Circuit's interpretation of the governing statute, the Parole Commission has no authority to add new charges to a parole violator warrant once the full term of the parolee's federal sentence has expired, even if the conduct at issue occurred before the full term date. Toomey

v. Young, 442 F. Supp. 387, 391 (D. Conn. 1977), aff'd, 589 F.2d 123 (2d Cir. 1978); see also Booze v. Thomas, 500 F. Supp. 327, 330-31 (S.D.N.Y. 1980) (same result under statute as amended). Thus, if Mr. Hunt had not been subject to revocation of his parole on other grounds, the 1987 conviction would never have come into play. But, since the 1985 conviction already formed the basis for revoking the petitioner's parole, the subsequent charges could also be considered in connection with re-parole, because, as discussed above, the Commission is entitled to take into account the full range of a parolee's conduct.

## Conclusion

For the reasons set forth above, Mr. Hunt's petition for a writ of habeas corpus is denied. As the petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253. The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         July 21, 2006

Copies mailed this date to:

Wayne Hunt
23403-149
FCI Otisville
P.O. Box 1000
Otisville, New York  10963

Matthew L. Schwartz, Esq.
Assistant United States Attorney
86 Chambers Street
New York, New York 10007